**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 1:04-CR-131-3** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **LARNELL LOWE,** | : | |
| | : | |
| **Petitioner** | : | |

**MEMORANDUM**

Before the Court is Petitioner Larnell Lowe's ("Lowe") pro se motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, filed without a supporting brief. (Doc. No. 221.) The Government filed a brief in opposition to the motion (Doc. No. 227), to which Lowe has responded (Doc. No. 229). The motion is ripe for disposition. For the following reasons, the motion will be denied.

**I.       BACKGROUND**

**A.  Procedural Background**

On April 7, 2004, a federal grand jury returned an indictment charging Lowe with firearm and carjacking offenses. (Doc. No. 1.) On August 11, 2004, the grand jury issued a superseding indictment adding a Notice of Special Findings and charging Lowe with the same offenses as those set forth in the original indictment, as follows: possession and use of a firearm during and in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) (Counts I and III), carjacking in violation of 18 U.S.C. § 2119 (Counts II and IV), and conspiracy to possess and use firearms during and in furtherance of crimes of violence in violation of 18 U.S.C. § 924(o) (Count V). (Doc. No. 44.) Lowe pleaded not guilty to all charges.

On November 3, 2004, following a two day trial, the jury returned a verdict finding Lowe

guilty of all charges.  (Doc. No. 101.)  Five days later, Lowe moved for a judgment of acquittal

(Doc. No. 104), which was denied by the Court in a memorandum and order issued on March 25,

2005 (Doc. No. 141).  On March 28, 2005, Lowe was sentenced to 504 months, consisting of

120 months on Counts II, IV, and V to be served concurrently, 84 months on Count I to be

served consecutively, and 300 months on Count III to be served consecutively.  (Doc. No. 146.)

After Lowe's conviction was upheld on appeal (See Doc. No. 216); see also United States v.

Lowe, 222 F. App'x. 220, 224, (3d Cir. 2007), he timely filed the present motion to vacate.

### B.  Factual Background

The events underlying this case are two assaults, robberies, and car thefts that occurred in

the early morning hours of January 1, 2004 in Harrisburg, Pennsylvania.  Shortly after midnight,

Grady Walker, a 19-year-old resident of the "Uptown" section of Harrisburg, had driven his

1993 red Buick Century to the Calabash Restaurant at 13th and Derry Streets.  (Trial Tr. 24-25.)

He was accosted by six or seven males after leaving the restaurant, one of whom he identified as

Lowe.  (Trial Tr. 27.)  After Lowe placed a revolver to his head, Walker was taken into an

alleyway beside the restaurant where at gunpoint he was relieved of his cell phone, cash, a .45

magnum pistol, and the keys to his car.  (Trial Tr. 28-30, 35, 63.)  Walker identified several

individuals as being involved in this assault and robbery, including Lowe and co-defendants,

Philip Walker and Brian Pendelton.[1]  Several of the individuals involved in the assault were

carrying firearms, and one of them, Shawn Cameron, held a short barreled shotgun against

---

[1]  Philip Walker and Brian Pendelton were both charged with Defendant in the Superseding Indictment.
Philip Walker subsequently pled guilty to two counts of carjacking and one count of possessing a weapon in
furtherance of a crime of violence.  Brian Pendelton subsequently pled guilty to one count of carjacking—he denied
being present for the Grady Walker carjacking—and one count of possessing a firearm in furtherance of a drug
trafficking crime.  Both co-defendants agreed to testify against Defendant pursuant to plea agreements negotiated
with the government.

Walker's face during the robbery.  (Trial Tr. 32-33.)  Lowe himself loaded his revolver with bullets in the alleyway during the assault.  (Trial Tr. 42-43.)  After acquiring his car keys and asking what kind of car he drove, one of the assailants took Walker's Buick Century.  (Trial Tr. 28-29.)  Lowe fled after the attack.  (Trial Tr. 157-159.)

Also on January 1, 2004, a short time after the robbery and assault of Grady Walker, Bryant Mathes ("Mathes") and his fiance, Angela Terry ("Terry"), were driving in Mathes's Honda Accord on their way to a party in the area of 18th and Mulberry Streets in Harrisburg, about a fifteen minute walk from the Calabash restaurant.  (Trial Tr.  76-77.)  As they parked, Lowe, Philip Walker, Brian Pendelton, Andre Pendelton, James Cousin, and Hassan Cousin were walking down the same street; they spotted the couple exiting the Honda and Lowe said "let's get them."  (Trial Tr. 159-160; 196-198.)  The group ran up to the car and Lowe placed a handgun in Terry's face.  Lowe then instructed her to place her hands on the car, demanded her purse, and grabbed her cell phone.  (Trial Tr. 67-69.)  On the driver's side of the car, Phillip Walker and Brian Pendelton approached Mathes, put guns in his face, and one punched him in the mouth.  (Trial Tr. 79.)  The assailants demanded to know where Mathes's keys were and retrieved them from his pockets, also taking his diamond ring, watch, and a quantity of cash. (Trial Tr. 163; 181-182; 198.)  One or more of the individuals involved in the robbery then drove away in Mathes's Honda.  Lowe fired one or more gunshots into the air following the assault and robbery as he fled the scene on foot.  (Trial Tr. 83; 160.)  After the Honda was recovered, Mathes was contacted and identified several items in the car that did not belong to him or Terry, including the cell phone taken from Grady Walker in the first carjacking.  (Trial Tr. 38; 140-41.)

### C.  Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence on the grounds that:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. In the interests of finality and conservation of resources, however, a district court may decline to reconsider an issue already litigated and decided adversely to the criminal defendant at his trial and on direct appeal. United States v. Orejuela, 639 F.2d 1055, 1057 (3d Cir. 1981). In evaluating a § 2255 motion, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005) (quoting Government of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)).

## III.    DISCUSSION

### A.  Ineffective Assistance

Lowe raises several issues regarding with his Sixth Amendment right to counsel, arguing that his counsel rendered ineffective assistance. To assess whether Lowe's counsel was constitutionally ineffective, the Court applies the standard set out by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Under *Strickland*, "a criminal defendant may demonstrate that his representation was constitutionally inadequate by proving: (1) that his attorney's performance was deficient, i.e., unreasonable under prevailing professional standards; and (2) that he was prejudiced by the attorney's performance." Booth, 432 F.3d at 546 (citing Forte, 865 F.2d at 62). The first prong requires that the defendant identify counsel's challenged acts or omissions, Strickland. 466 U.S. at 690, and show that counsel's representation fell below

an objective standard of reasonableness.  <u>United States v. Lilly</u>, 536 F.3d 190, 196 (3d Cir. 2008)

(citing <u>Strickland</u>, 466 U.S. at 688.)  Judicial scrutiny is highly deferential under the first prong,

and courts "must indulge a strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance."  <u>Booth</u>, 432 F.3d at 546 (quoting <u>Strickland</u>, 466 U.S. at

688-89)).  To establish prejudice for the second prong, the defendant must prove that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  <u>Id.</u>  "A reasonable probability is a probability sufficient to

undermine confidence in the outcome."  <u>Strickland</u>, 466 U.S. at 694.

When evaluating a claim of ineffectiveness under Strickland, the Court may consider the

prejudice prong before examining the performance of counsel prong "because this course of

action is less burdensome to defense counsel."  <u>Lilly</u>, 536 F.3d at 196 (quoting <u>Booth</u>, 432 F.3d

at 546)).

### 1.  Failure to Raise Intent Element

In ground one of his petition, Lowe argues that his counsel was ineffective because:

> At trial, defense attorney failed to argue the "intent" element of the
> carjacking statute, which specically [sic] states . . . with the intent to
> cause the death or serious bodily injury shall be chared [sic] under
> this act.  Here the government failed to prove that this Petitioner
> cause [sic] a death or cause [sic] serious bodily injury.  Therefore the
> evidence was insufficient.

(Doc. No. 221 at 5.)  Lowe admits in his petition that he raised the underlying sufficiency of

evidence issue on his appeal to the Third Circuit, which held:

> Finally, Lowe argues that the evidence was insufficient to prove that
> the carjacking participants intended to cause death or serious bodily
> injury to Grady Walker if he did not surrender his car.  In [<u>United
> States v. Lopez</u>, 271 F.3d 472, 486 (3d Cir. 2001)] we held that
> where 'the defendants insisted [the victim] give them her keys in the

> course of a robbery and assault,' there was sufficient evidence of an intent to cause death or serious harm. In this case, there was evidence that the attackers repeatedly asked Grady Walker for his keys while pointing a gun at him. This evidence was sufficient to prove that the attackers intended to cause death or serious bodily injury if Grady Walker did not surrender his keys.

United States v. Lowe, 222 F. App'x. 220, 224 (3d Cir. 2007). The United States argues that the Third Circuit's determination on the underlying substantive legal issue, now being raised as grounds for ineffective assistance of counsel, constitutes the law of the case and is not subject to consideration because "the Third Circuit rather than this Court would enjoy the prerogative of overruling its own earlier decision." (Doc. No. 227 at 12-13.) Lowe does not offer any argument on this issue in his brief in response to the Government. (See Doc. No. 229.)

The Court agrees with the Government that the sufficiency of evidence issue on the intent element was litigated at Lowe's trial and on his direct appeal and decided adversely against him, but here Lowe ostensibly raises the issue under ineffective assistance, which is permitted on collateral review under § 2255. See United States v. Palumbo, 608 F.2d 529, 533 (3d Cir. 1979). Despite this, the record conclusively demonstrates the inaccuracy of Lowe's claim that his defense attorney failed to argue the "intent" element of the carjacking statute at trial: it is raised in defense counsel's argument for amended final jury instructions (Trial Tr. 239-40), it is raised in his closing argument to the jury (Trial Tr. 296), and it is also raised in his oral (Trial Tr. 250) and written (Doc. No. 123 at 6) motion for judgment of acquittal. Further, the Third Circuit reviewed this Court's ruling on this issue under a plenary standard, indicating that the issue was properly raised at the trial and preserved for appeal. Lowe, 222 F. App'x. at 222-23. On the basis of this record, the Court finds that Lowe's factual allegation that his counsel failed to argue this element is clearly frivolous and the Court need not consider whether such a failure would

constitute ineffective assistance of counsel.  Further, after review of the arguments defense counsel did advance on the intent element, the Court finds that there was no ineffective assistance of counsel on this issue.

Additionally, though Lowe now raises this issue ostensibly under ineffective assistance grounds, to the extent Lowe attempts to raise the sufficiency of evidence issue on the intent element in his petition, the Court declines to reconsider the issue because relitigation is unnecessary.  See Orejuela, 639 F.2d at 1057 ("Once a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. § 2255."); Palumbo, 608 F.2d at 533 (3d Cir. 1979).  Accordingly, Lowe's petition will be denied as to ground one.

### 2.  Failure to Move for Judgment of Acquittal

In ground two of his petition, Lowe argues that his counsel was ineffective because: "[t]rial counsel failed to motion for judgement [sic] of accquital [sic] in the Grady Walker carjacking.  Where the testimony was presented indicated [sic] that this Petitioner was not present during or after the Grady Walker carjacking.  Defense counsel was effective [sic]."  The Government argues that these contentions are meritless because defense counsel did move for judgment of acquittal on the count charging the Grady Walker carjacking, the Third Circuit found sufficient evidence to sustain the charge against Lowe as a co-conspirator, and the evidence was sufficient to prove Lowe was a participant in the Grady Walker carjacking and was guilty as a principal.  (Doc. No. 227 at 14-15.)  In his response to the Government's brief, while acknowledging that his counsel orally made the three arguments in support of judgment for

acquittal, Lowe maintains his position that counsel was ineffective for failure to move for a judgment of acquittal because "trial counsel does not actually state for the record, 'defense moves for a judgment of acquittal.' . . . [T]he government [also] fails to demonstrate where the court denies the defense counsel's request for a judgment of acquittal."  (Doc. No. 229 at 1-2.)

Again, the record conclusively demonstrates the inaccuracy of Lowe's contentions about his counsel.  Rule 29 of the Federal Rules of Criminal Procedure provides in pertinent part: "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  Lowe's counsel clearly stated on the record his motion for judgment of acquittal after the close of the evidence and before the case went to the jury: "[f]or the record, Your Honor, at this time I would like to make a motion for judgment for motion of acquittal on all the counts charged in the indictment."  (Trial Tr. 250.) After hearing argument from both parties on the oral motion, the Court denied the motion: "[t]he Court finds that there is sufficient evidence of record from which a reasonable jury could conclude that the Government has established all of the crimes charged, so I will deny the motion and allow the case to proceed to the jury."  (Trial Tr. 253.)  After the jury verdict, defense counsel renewed his motion for judgment of acquittal with a written motion pursuant to Rule 29(c)(1) (Doc. No. 104), which was also denied by the Court (Doc. No. 141).  Finally, the Third Circuit noted that "Lowe moved for a judgment of acquittal at the close of the government's case and after the verdict, on the ground that there was insufficient evidence to support the convictions" and did not review the issue under a plain error standard.  See Lowe, 222 F. App'x. at 222.

On the basis of this record, the Court finds Lowe's factual allegation that his counsel failed to move for judgment of acquittal is clearly frivolous and the Court need not consider whether failing to move for judgment of acquittal under these circumstances would have constituted ineffective assistance of counsel. Further, after review of the arguments defense counsel did advance in support of the motions for judgment of acquittal, the Court finds that there was no ineffective assistance of counsel on this issue.

Additionally, both this Court, (Doc. No. 141), and the Third Circuit, Lowe, 222 F. App'x. at 223-24, have held that the evidence was sufficient to sustain the conviction for the Grady Walker carjacking. As such, to the extent Lowe attempts to raise this again in his petition, the Court declines to reconsider the issue because relitigation is unnecessary. See Orejuela, 639 F.2d at 1057; Palumbo, 608 F.2d at 533.

**B. Sentence**

`        Lowe claims that the Court abused its discretion at sentencing:

> Petitioner was sentence [sic] to 504 months for violating 18 USC 2119 two counts / two counts of using a firearm in violation of 18 USC 924(c). The evidence presented at trial was sufficient to prove that the Petitioner was involved in only one carjacking; there was no evidence that Petitioner possessed a weapon or cause [sic] serious bodily harm. Here the court provided a sentence far beyond the statutory guideline for 18 USC § 2119 which states . . . under this title . . . the defendant shall not be imprisoned for more than 15 years. 504 months is 42 years. This sentence is 'unreasonable.'

(Doc. No. 221.) Lowe contends in his response to the Government that his sentence was excessive to meet the § 3553(a) sentencing factors and that he was sentenced before the United States Supreme Court held the sentencing guidelines advisory in United States v. Booker, 543 U.S. 220 (2005). In support of this contention, Lowe argues that "[a] 42 year sentence, is in fact

a life extinguishing sentence, when you consider the average life expectancy for the African American man is 62.1 years." (Doc. No. 229.) The Government argues that this claim is procedurally defaulted because it was not asserted on direct appeal and Lowe cannot satisfy the cause and actual prejudice standard because his counsel's failure to make these arguments did not prejudice him. (Doc. No. 227 at 16.)

It is clear that failure to raise a claim on direct appeal results in a procedural default and forecloses collateral review unless the petitioner shows cause to excuse the default and actual prejudice resulting from the errors, or that he is actually innocent. United States v. Frady, 456 U.S. 152, 167-68 (1982); see also United States v. Essig, 10 F.3d 968, 979 (3d Cir. 1993) ("*Frady*'s cause and prejudice standard applies to § 2255 proceedings in which a petitioner seeks relief from alleged errors in connection with his sentence that he has not directly appealed."). To establish "cause" for excuse of procedural default, a defendant must show that "some objective factor external to the defense impeded counsel's efforts to raise the claim." United States v. Pelullo, 399 F.3d 197, 223 (3d Cir. 2005) (citing McCleskey v. Zant, 499 U.S. 467, 493 (1991)). "Examples of external impediments which have been found to constitute cause in the procedural default context include interference by officials, a showing that the factual or legal basis for a claim was not reasonably available to counsel, and ineffective assistance of counsel." Id. (citing Wise v. Fulcomer, 958 F.2d 30, 34 (3d Cir. 1992)). To demonstrate actual prejudice, the petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage. Frady, 456 U.S. at 171.

In explaining why he did not raise this issue on appeal, Lowe only alleges in his petition that he instructed his counsel to raise this objection, but his counsel refused. (Doc. No. 221.) As

the Government points out, if failing to raise these issues constituted ineffective assistance of counsel, it would be sufficient to satisfy the "cause" prong of the *Frady* analysis.  See Pelullo, 399 F.3d at 223.  It is clear here, however, that Lowe can neither demonstrate ineffective assistance nor actual prejudice because there is no prejudice from his counsel's failure raise these meritless arguments.

From his petition, Lowe seems to believe that he was sentenced to 42 years based solely on the carjacking offenses under 18 U.S.C. § 2119, and claims that such a sentence is beyond the maximum for that guideline.  While Lowe is correct that § 2119 specifies a sentence of no more than 15 years where no serious bodily injury results, he misapprehends the nature of his sentence in his petition.  He was sentenced to a term of 120 months concurrently on both of his carjacking counts and the conspiracy count, which is under the 15 year maximum.  The remaining time was assessed for his offenses of brandishing and discharging a firearm during the carjackings under 18 U.S.C. § 924(c)— representing 84 months and 300 months of his sentence respectively.  As is clear from the statute, the Court assessed the mandatory minimum sentence for these offenses and was required to assess the time to run consecutively to the other terms of imprisonment.  See 18 U.S.C. § 924(c)(1)(D)(ii).  As such, Lowe has not been sentenced beyond the maximum permitted and cannot show any prejudice because there is no reasonable probability that his sentence would have been altered had his counsel raised this argument.

Also contrary to Lowe's claim, he was not sentenced under the "mandatory regime" of the federal sentencing guidelines.  In fact, it is clear from the record that the Court and counsel were well aware of that the guidelines were advisory after *Booker*, and Lowe's counsel raised the issue in his statement to the Court.  (Sentencing Tr. at 4-5.)  After sustaining both of Defendant's

objections to the guideline enhancements, the amended guideline range was 120 to 150 months, not including the mandated 384-month term of imprisonment required for the two offenses under 18 U.S.C. § 924(c). Lowe declined to speak on his own behalf with respect to the sentence, other than to say "[a]ll I wanted to know was about my motion for judgment of acquittal. You denied it. You denied it." (Sentencing Tr. at 12-13.) Though not mentioning the § 3553(a) factors specifically, the Court found that a sentence within the guideline range was adequate to address the societal goals, but noted that, despite Lowe's serious conduct, a sentence at the bottom end of the range was appropriate because of the high mandatory minimum terms of imprisonment that would be applied. (Sentencing Tr. at 14.) As such, Lowe's contention that he was sentenced under the mandatory regime is belied by the record. Further, the Court rejects Lowe's contention that his sentence is unduly severe on the basis of his age and lengthy term of imprisonment. The Court considered the § 3553(a) factors, the advisory nature of the guidelines, and Lowe's serious conduct in concluding that the lowest possible guideline sentence of 504 months was necessary and appropriate under the circumstances.

Finally, in the guise of challenging his sentence, Lowe argues again that the there was insufficient evidence to support his conviction for the Grady Walker carjacking. Both this Court and the Third Circuit have already addressed that argument and it merits no further consideration. Lowe also raises for the first time his contention that "there was no evidence Petitioner possessed a weapon." This argument, which is little more than an undeveloped assertion, see United States v. Irizarry, 341 F.3d 273, is awkward in this context—it is not clear how such a claim could affect the Court's discretion at sentencing—but the Court will consider this argument briefly due to Lowe's pro se status. This contention was not brought by Lowe's

counsel in either his motion for judgment of acquittal or before the Third Circuit. As such, it is also subject to the cause and actual prejudice standard articulated above. The Court agrees with the Government that Lowe has set forth no basis to disregard the jury's verdict—in fact he tellingly seems to have abandoned this argument entirely in his response brief to the government—and there can be no prejudice here because the evidence at trial was plainly sufficient to show that Lowe possessed, brandished, and discharged a weapon during and in furtherance of these carjackings, as found by the jury. (See Trial Tr. 28-30, 42, 43, 152, 160, 178, 200, 281.)

Because none of Lowe's arguments are meritorious, he cannot satisfy the cause and actual prejudice standard of *Frady*, and this claim is procedurally defaulted.

### C. New Arguments Raised in Petitioner's Response

Lowe raises several arguments in his response to the Government that were not raised before this Court or the Third Circuit in his direct appeal or even in his initial § 2255 petition: (1) that Counts One, Three, and Five were based on a single "unit of prosecution" and § 924(c) does not authorize multiple convictions when those predicate offenses are committed with a single use of a firearm; (2) that the indictment was faulty because it listed "18 U.S.C. § 924(c)" for the gun offenses, but did not specify the applicable subsections; (3) that the jury was not properly instructed on subsection (C) of § 924(c); (4) that the "except" clause of 924(c)(1)(A) would exempt Lowe from the section because a greater minimum sentence is provided by subsection "824(e)"; and (5) that the consecutive sentences imposed under § 924(c) constitute double jeopardy. (Doc. No. 229 at 4-5.) Even read liberally, Lowe's petition has not fairly raised these grounds for relief such that the Government had a fair opportunity to respond. Lowe's

responsive brief was not a vehicle to raise new issues, especially considering the Court's notice sent pursuant to United States v. Miller, 197 F.3d 644 (3d Cir. 1999), on July 14, 2008, advising Lowe that "failure to present a claim at this time may waive or forfeit forever the right to present the claim to a federal court." Despite this, even were these issues raised in Lowe's petition, they would not entitle him to relief. Because none of these arguments were presented to this Court or to the Third Circuit on appeal, they are subject to the cause and actual prejudice test discussed above. Lowe does not attempt to explain in his brief why these claims were not presented. He also fails to show actual prejudice because his claims are meritless and would not entitle him to any relief.

The cases cited by Lowe in support of his "unit of prosecution" theory are distinguishable from the present circumstances. In United States v. Wallace, the Second Circuit held that multiple § 924(c)(1) convictions were improper for a defendant who possessed a firearm in furtherance of "co-terminous predicate offenses involving essentially the same conduct." 447 F.3d 184, 188 (2nd Cir. 2006); see also United States v. Finley, 245 F.3d 199, 207 (2d Cir. 2001). Unlike that case, the facts underlying the two § 924(c) counts here do not involve a single use of a firearm in furtherance of simultaneous predicate offenses consisting of virtually the same conduct. Rather, Lowe was convicted of using a firearm in furtherance of two separate carjackings, which involved different times, locations, victims, and vehicles. As such, the multiple § 924(c) convictions and corresponding terms of imprisonment were proper.

The remainder of Lowe's new claims require little discussion. He complains that no subsection was supplied in the indictment charging him with violation of 18 U.S.C. § 924(c). Though such a claim is waived if not made before trial, see Fed. R. Crim. P. 12(e), any citation

error in the indictment, though one has not occurred here, is not grounds to dismiss the indictment or reverse a conviction unless the defendant was misled and thereby prejudiced, Fed. R. Crim. P. 7(c)(3).  Here, there is no possibility of such prejudice.  Lowe next claims that the phrase "except to the extent that a greater minimum sentence is otherwise provided" in § 924(c)(1) exempts him from the consecutive sentences because "subsection § 824(e)" subjects him to a fifteen year minimum term of imprisonment.  The Court will assume that Lowe refers to § 924(e), but it is still unclear exactly what Lowe argues here, as he was not charged or convicted of a violation of that subsection and was therefore not subject to the provided mandatory minimum.  The last two claims—that the Court did not instruct the jury on "the subsection (C) element" and that the consecutive sentences violate double jeopardy—are similarly meritless, largely for the same reasons discussed above, and are too vague, undeveloped, and conclusory to warrant further discussion.  <u>See</u> <u>United States v. Thomas</u>, 221 F.3d 430, 437 (3d Cir. 2000).  As such, Lowe is not entitled to relief on any of these claims.

## IV.    MOTION TO AMEND

Lowe has moved to amend his motion in order to raise additional issues of ineffective assistance pursuant to Rules 15(a) and (b) of the Federal Rules of Civil Procedure.  (Doc. No. 230.)  The Federal Rules of Civil Procedure apply to motions to amend § 2255 motions.  <u>See</u> <u>United States v. Duffus</u>, 174 F.3d 333, 336 (3d Cir. 1999).  Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend its pleading once as a matter of course before a responsive pleading is served.  Fed. R. Civ. P. 15(a)(1).  In this case, however, the government responded to Lowe's § 2255 petition before he sought to amend it, so the Court must grant Lowe leave before he may amend his petition to include the new claims.  Fed. R. Civ. P. 15(a)(2); <u>see</u>

<u>also</u> <u>Duffus</u>, 174 F.3d at 336.

Rule 15(a)(2) directs that the Court should freely give leave to amend when justice so requires. "The Supreme Court has indicated that in the absence of evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment [or] futility of amendment,' leave to amend should be freely given." <u>Duffus</u>, 174 F.3d at 337 (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)). Just as in typical civil litigation, an amendment is futile if it is apparent from the record that the claim is without merit and would not affect the outcome of the petition. <u>See</u> <u>Riley v. Taylor</u>, 62 F.3d 86, 91-92 (3d Cir. 1995). Here, even assuming that these proposed amendments are timely, <u>see</u> <u>Mayle v. Felix</u>, 545 U.S. 644 (2005), which is not clear from the record, they would not entitle Lowe to any relief because they are meritless. As such, the motion will be denied.

All the issues raised by Lowe in his amended petition deal with his counsel's decisions at trial. The Court notes that an attorney's strategic decisions at trial, such as determining the appropriate cross-examination and which objections to raise, are within the realm of the attorney's discretion or judgment and will typically not be second guessed by the Court. <u>See</u> <u>Government of Virgin Islands v. Weatherwax</u>, 77 F.3d 1425, 1436 (3d Cir. 1996); <u>United States v. Pungitore</u>, 965 F. Supp. 666, 672 (E. D. Pa. 1997). Even were the Court to find that the complained of actions and omissions could satisfy the first prong of *Strickland*, however, there is clearly no prejudice that would even suggest a reasonable probability that the result of the proceeding would have been different.

**A. Bryant Mathes's Testimony**

The first issue deals with Bryant Mathes's description of his assailants:

> Mr. Mathes stated that the complexion of the male he described was the complexion of the defendant, but did not say it was the defendant.  However, during his testimony when he stated 'he,' that could have meant 'he' as in the defendant, or 'he'as in the male identified.  I . . . asked attorney [sic] to ask the question, when Mr. Mathes said 'he' did Mr. Mathes mean 'he' as in the defendant or another defendant.  Attorney refused [sic] to ask the question despite defendant repeatedly telling him to ask the question.

(Doc. No. 230.)  Bryant Mathes testified that nine or ten guys attacked him and his fiance at 18th and Mulberry street the night his car was taken, six of whom came up to his side of the vehicle.  (Trial Tr. 80.)  Mathes only gave a general description of two of the men: the man who punched him after he got out of the car and the man who held a gun on him.  (Trial Tr. 84-85.)  He described the man who punched him as a "short, light-skinned kid.  He was about five seven, five five, somewhere around there, between there."  (Trial Tr. 85.)  He described the man that put the gun in his face as "brown-skinned. . . . probably like five ten, probably like five eleven.  He had a – I mean, he looked kind of – he looked like he had a little weight on him, but he wasn't too much bigger than me.  I could just see all the little pimples and bumps on his face."  (Id.)  Asked to explain what he meant when he referred to "brown" and "light-skinned" complexion, Mathes stated that he considered himself to be "light-skinned" and Lowe to have a "[b]rown" skin tone.  (Id.)  Beyond that, Mathes never identified either of the men as Lowe.  In cross-examination, Mathes admitted that he was unable to identify the individuals when interviewed by the police.  (Trial Tr. 90.)

Lowe never attempts to explain how his counsel's failure to ask "when Mr. Mathes said "he" did Mr. Mathes mean "he" as in the defendant or another defendant," might have prejudiced

the outcome of the case. To the extent he thinks this question may have clarified that he was not one of the men attacking Mathes, this is already clear from other evidence at trial. Phillip Walker testified, for instance, that he and Brian Pendelton were the men that attacked Mathes: "[w]e saw a male and a female getting out of this nice black Honda. . . . We decided we were going to rob them. . . . [W]hen they was getting out, he got grabbed. Me and Brian had grabbed him. Larnell went over to the female, grabbed her, took money from her. We had him on the ground. I was in his pockets." (Trial Tr. 159.) Brian Pendelton also made it clear in his testimony describing the Mathes carjacking that he was the one robbing Mathes:

> I mean, I went over to the driver's side door, and, I mean, Philip Walker pulled the – I mean, he told the guy to get to the ground, he had a gun on him. He told the guy to get to the ground, he had a gun on him. He told the guy to get on the ground. And then the guy got on the ground. I asked him where was the keys at, and then the guy said the keys was in the vehicle.

(Trial Tr. 198.) Pendelton further testified that Lowe himself was "[o]n the other side of the car, like on the passenger side of the car . . . . doing something with the female." (Trial Tr. 199.) Lastly, in closing argument, the prosecutor argued that Pendelton and Walker were the ones who attacked Bryant Mathes in the second carjacking. (Trial Tr. 271.) As such, to the extent counsel may have clarified Mathes's testimony about whether the man attacking him was Lowe, there is no suggestion that this omission suggests a reasonable probability that the result of the proceeding would have been different had Lowe's counsel followed his request.

### B. Brian Pendelton's Testimony

Lowe's second issue deals with Brian Pendelton's testimony:

> Attorney allowed co-defendant Brian Pendelton to testify to [the Grady Walker carjacking] that he was not present for. Brian Pendelton said he was not present for the robbery and carjacking of

> Grady Walker.  He heard about it from Phil (Phillip Walker).  Mr.
> Pendelton also said that he read about [sic] threw [sic] transcripts.

(Id.)  There are many problems with Lowe's claim, not least of which is that Lowe's counsel had

no authority to disallow government witnesses at the trial.  Construing the allegation liberally on

account of Lowe's pro se status, the Court will assume that Lowe believes his attorney was

ineffective for failing to object to this testimony.  The record contradicts Lowe's assertions,

however, as Lowe's counsel objected on this very issue and Pendelton made clear to the Court

that he was recounting events described to him by Larnell Lowe.  Pendelton testified as follows

concerning the Grady Walker carjacking:

> Q: Did you hear about something that happened [at the Calabash]?
>
> A: Yes.
>
> Q: And who did you hear about that from?
>
> A: I heard about it from – Phil told me the one day, and I heard about
> – Larnell told me the other day about what happened.
>
> Q: What did Larnell tell you about that?
>
> A: Just that somebody got robbed, somebody got robbed from their
> belongings in the alleyway over there and that Phil was there. . . .
>
> Q: Well, you said that Larnell Lowe told you that.  What did he tell
> you about that robbery? . . .
>
> A: That Grady Walker was robbed and that his vehicle was taken
> away from him.  You mean the specific event?
>
> Q: Yes.
>
> A: Specific events, just that they ran up on him and made him get on
> the ground, took his personals away from him, and among his person
> was the car keys, and that Shawn Cameron took off and took the
> vehicle.  And that's --

Q: And when you say "they" ran up on him, who are you talking about?

A: From what I know, I don't know if it was more people or whatever, but . . . .

(Trial Tr. 194-95.)  In response to these questions, Lowe's counsel objected, stating: "I have an objection as to the testimony because I'm not sure where it's coming from.  This is just something he heard on the streets, or what is the source?"  (Trial Tr. 195.)  The Court then addressed Pendelton and informed him that "if you're talking about something that Mr. Lowe told you, then we can hear that, but it's important that you identify it as such.  If Mr. Lowe told you those things, that's what we want to know."  (Trial Tr. 195.)  Pendelton responded "yes" to the Court and his testimony was allowed to continue, with the prosecutor asking only what Larnell Lowe had told Pendelton about the events surrounding the Grady Walker carjacking.  As such, Lowe's assertions that Pendelton testified about the events he heard about only from Philip Walker or "transcripts" and that his attorney "allowed" this testimony are clearly contradicted by the record.  Further, to the extent that Lowe argues that his attorney should have interposed further objection, it is clear that admissions and statements by a party to the case are not considered hearsay if offered against that party.  See Fed. R. Evid. 801(d).  As such, any further objection would have been meritless, and Lowe's counsel cannot be said to have acted ineffectively for not interposing a frivolous objection.

Finally, even absent Pendelton's testimony on the Grady Walker carjacking, there was ample other evidence in the case from which the jury could have found Lowe guilty on that count, including the testimony of Grady Walker—who identified Lowe as one of his assailants that put a gun to his head—and also the testimony of Philip Walker.  As such, Lowe has failed to

demonstrate a reasonable probability that the result of the proceeding would have been different but for his counsel's alleged failure to object to Pendelton's testimony about the Grady Walker carjacking.

### C. Angela Terry's Testimony

Lowe's third issue is similar to his first, dealing with Angela Terry's description of a "tall dark skinned slender male." Lowe complains that his counsel refused to seek clarification about to whom she referred with that description—the Defendant or only the man described. (Doc. No. 230.) In describing the events that took place leading up to the second carjacking, Terry explained that about ten men walked up to their Honda after they parked on Mulberry Street. (Trial Tr. 67-68.) As she got out of the car, one of the men put a gun to her head and told her to put her hands on the car and started questioning her about her belongings. (Trial Tr. 69.) She could only give a basic description of the one man who held a gun to her head:

> Q: Could you tell their ethnicity, the color of their skin?
>
> A: Well, when I turned my face to look at the guy that had the gun pointed to me, when I looked at his face, I could tell that he was black, dark skin.
>
> Q: And he was taller or shorter than you?
>
> A: Taller.
>
> Q: And how tall are you?
>
> A. Five-four.
>
> Q: What kind of build did he have?
>
> A: He was slender.
>
> Q: When you say "slender," was he – are you referring to him being skinny or not fat?

A: Skinny, skinny. . . .

Q: Did you notice anything else about him?

A: No.

(Trial Tr. 71.)  Terry also testified that after seeing Lowe's co-defendants, Pendelton and Philip Walker at a preliminary hearing, she knew that neither of them had been the one that grabbed her and pointed the gun at her that night.  (Trial Tr. 73.)

Again, Lowe does not explain how his counsel's failure to ask "did she mean 'he' as in the Defendant or [he as in] the male she [described]" could have caused prejudice to the outcome of the case.  Terry herself never identified Lowe as the one who put the gun to her head, but only testified that she knew it was neither Brian Pendelton nor Philip Walker who grabbed her after seeing them at the preliminary hearing.  She merely described her assailant and the gun he was carrying.  As such, despite never affirmatively identifying him, Lowe seems to have wanted his attorney to push Terry on the issue.  Even if she could not identify him, however, both Pendelton and Philip Walker testified that Lowe grabbed and held up Terry, as set out above.  Given that the government put forward ample evidence from which the jury could have found Lowe guilty on this count for his involvement in the Mathes/Terry carjacking, Lowe has not demonstrated a reasonable probability that, but for his counsel's failure to ask the requested question, the result of the proceeding would have been different.

Given all of the above, the Court finds that proposed amendments to Lowe's § 2255 petition are futile as they would not entitle Lowe to relief.  Accordingly, the motion will be denied.

## V.  HEARING AND CERTIFICATE OF APPEALABILITY

## A. Evidentiary Hearing

The decision of whether or not to hold an evidentiary hearing when a petitioner brings a motion to vacate pursuant to § 2255 is within the discretion of the district court, though there are limitations on this discretion. United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005). The district court is required to hold a hearing "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." United States v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008) (citing Booth, 432 F.3d at 545). This is a low threshold and is not a high bar for petitioners to meet. Id.

For the reasons discussed above, the Court finds that Lowe has not met this threshold and that the motion, files, and records of the case show conclusively that Lowe is not entitled to any relief. As such, the Court declines to conduct an evidentiary hearing in this matter.

## B. Certificate of Appealability

Pursuant to Local Appellate Rule 22.2 of the Third Circuit, at the time a final order denying a petition under 28 U.S.C. § 2255 is issued, the Court must make a determination as to whether a certificate of appealability should issue. The Antiterrorism and Effective Death Penalty Act of 1996 requires that a certificate of appealability be issued before an appeal of the denial of a § 2255 petition may proceed. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debateable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Where the district court dismisses the petition based on procedural grounds,

> "a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. . . .Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.

Id.

In this case, Lowe's allegations and claims are meritless, vague, and largely contradicted by the record. Several were not raised by counsel at trial, on direct appeal, or even in Lowe's original pro se petition. Given these failings, as illustrated and discussed above, the Court is not persuaded that reasonable jurists would find the Court's assessment of Lowe's petition debatable or wrong. Therefore, Petitioner cannot meet the standard required by § 2253(c) and the Court will not issue a certificate of appealability.

## VI.    CONCLUSION

For the foregoing reasons, the Court will deny Lowe's pro se motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, his motion to amend, and his request for an evidentiary hearing on this matter. The Court shall not issue a certificate of appealability. An order consistent with this memorandum will follow.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 1:04-CR-131-3** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **LARNELL LOWE,** | : | |
| | : | |
| **Petitioner** | : | |

## <u>ORDER</u>

**AND NOW**, this 7th day of July 2009, upon consideration of Petitioner Larnell Lowe's pro se motions to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Doc. No. 221) and to amend (Doc. No. 230), filed in the above-captioned matter, and for the reasons set forth in the Court's memorandum opinion filed herewith, **IT IS HEREBY ORDERED THAT** the motions are **DENIED**.

**IT IS FURTHER ORDERED THAT** a certificate of appealability shall not issue, in that the Petitioner has not made a substantial showing of the denial of a constitutional right or demonstrated that a reasonable jurist would debate the correctness of this ruling.

 s/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania